### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF KANSAS

KAULI SAILI, JR.,             )
             )
        Plaintiff,      )
             )
             )
v.                )      Case No. 22-2060
             )
WASTE MANAGEMENT OF   )
KANSAS, INC.,          )
             )
        Defendant.   )
_____ )

### <u>COMPLAINT</u>

The plaintiff, Kauli Saili, Jr., states and alleges the following claims for relief against the defendant, Waste Management of Kansas, Inc.

### <u>JURISDICTION AND VENUE</u>

1.    This is an employment case based upon and arising under 42 U.S.C. § 1981, and the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2611 et. seq.

2.    This court has subject matter jurisdiction over the plaintiff's claims pursuant to 28 U.S.C. § 1331, since these claims arise under federal statutory law.

3.    All of the wrongful acts and practices alleged below were committed within the State of Kansas, and venue is proper in this court pursuant to 28 U.S.C. §1391(b)-(c).

### <u>PARTIES</u>

4.    The plaintiff, Kauli Saili, Jr., is a Pacific Islander with dark skin tone, and his national origin is American Samoan.  He resides in Topeka, Kansas, and he has been employed by the defendant for over five years.

5.     The defendant, Waste Management of Kansas, Inc. ("Waste Management"), is a corporation with its principal place of business in Houston, Texas. Waste Management owns and operates Rolling Meadows Landfill and Recycling Center in Topeka, Kansas ("Rolling Meadows").

## **FACTUAL ALLEGATIONS**

6.     Mr. Saili has over 23 years of experience in operating heavy equipment, and he was hired by Waste Management in 2016.  Mr. Saili was initially assigned to Waste Management's landfill in Johnson County, Kansas, but he soon applied to transfer to the Rolling Meadows landfill in Topeka.

7.     The local supervisor at Rolling Meadows told Mr. Saili that he would be transferred to Rolling Meadows as soon as a position for a heavy equipment operator opened up.  Thereafter, however, two positions for a heavy equipment operator opened up at Rolling Meadows, but Mr. Saili was not transferred to fill either of these positions. Rather, two white applicants, with far less experience than Mr. Saili, were hired to fill both of these positions.

8.     Mr. Saili was eventually transferred to Rolling Meadows to work as a heavy equipment operator.  At that point in time, the lead heavy equipment operator was Robert Smith, who is African American.  During his employment at Rolling Meadows, Mr. Saili and Mr. Smith were both subjected to a racially hostile, intimidating, and offensive work environment.

9.     For example, one of the local supervisors at Rolling Meadows frequently told Mr. Saili, "that is the way we do things in America."  Also, all of the local supervisors at Rolling Meadows assigned Mr. Saili the least desirable job duties. For example, Mr.

Saili was routinely required to continue working after 3:00 p.m., whereas the white heavy equipment operators were allowed to leave work at 3:00 p.m.

10.     In addition, during the 2020 presidential election, an offensive printed document was taped to Mr. Smith's personal locker at the work site. This document stated: "Give a black man a fish and he will eat for a day. Give a black man a free cell phone, food stamps, section 8 housing, a six pack of beer and he'll vote Democrat the rest of his life."

11.     Furthermore, the supervisors at Rolling Meadows ignored, and were dismissive of, Mr. Saili's recommendations for safe and efficient operation of the landfill. For example, in 2020, the supervisors of Rolling Meadows became concerned that the height limit of the landfill needed to be increased by a total of 25 feet, because the level of garbage was getting close to the height limit authorized by the Board of Commissioners of Shawnee County, Kansas.

12.     On multiple occasions, Mr. Saili advised the supervisors that the height limit of the landfill did not need to be increased, as long as the landfill was operated in a proper and efficient manner. Mr. Saili further made specific recommendations to the supervisors as to how the landfill could be operated in a proper and efficient manner, so that the height limit of the landfill did not need to be increased. However, the supervisors ignored and dismissed Mr. Saili's recommendations.

13.     In November of 2020, Waste Management made a proposal to the Board of Commissioners of Shawnee County to increase the height limit of the landfill by a total of 25 feet. The Board rejected this proposal because of concerns expressed by

landowners who live near the landfill. The Board stated that the current height limit of the landfill will remain the same.

14.     Mr. Saili complained to the local Human Resources Department about the racially hostile work environment to which he was subjected.  However, the Human Resources Department failed to take reasonable remedial action in response to Mr. Saili's complaints.   For example, no investigation was conducted regarding the racially discriminatory conduct reported by Mr. Saili.

15.     During the first part of 2021, Mr. Saili requested, and was granted, FMLA leave.  Prior to June 21, 2021, Mr. Saili used approximately 32 hours of FMLA leave on an intermittent basis.

16.     On May 4, 2021, Mr. Smith was involved in an incident with Daniel Rohrer, another heavy equipment operator employed by Waste Management at Rolling Meadows. Mr. Rohrer, who is white, backed a compactor which he was driving into a dozer which Mr. Smith was driving. Both workers saw no damage to the operating equipment; decided to continue their work; and did not file an incident report. This was a routine practice amongst the operators at Rolling Meadows.

17.     On May 18, 2021, Mr. Smith was terminated from his employment with Waste Management by his local supervisor and by his regional supervisor. However, Mr. Rohrer was not terminated from his employment.

18.     After Mr. Smith had been terminated from his employment, Mr. Saili made it known to the supervisors at Rolling Hills that he was interested in promotion to the position of lead heavy equipment operator, which had become vacant upon Mr. Smith's termination. However, the position of lead heavy equipment operator was never posted

4

as being open; no opportunity was ever given to submit applications to fill the position; and no interviews were conducted of the potential candidates for the position.

19.    At the end of May, 2021, Keith Cain was promoted to the position of lead heavy equipment operator at Rolling Meadows. Mr. Cain, who is white, had worked at Rolling Meadows for only about one year, and he had been trained by Mr. Saili.

20.    Mr. Cain told Mr. Saili that Mr. Saili was more qualified for the position of lead heavy equipment operator than Mr. Cain was. Mr. Cain also told another employee at Rolling Meadows that Mr. Saili had not been promoted to the position of lead heavy equipment operator because Mr. Saili was out on FMLA leave too often.

21.    On June 21, 2021, Mr. Cain was promoted to the position of operations manager at Rolling Hills. This was a newly created position which was never posted as being open; no opportunity was ever given to submit applications to fill the position; and no interviews were conducted of the potential candidates for the position.

22.    After Mr. Cain had been promoted to the position of operations manager, Mr. Saili began using his FMLA leave on a continuous basis because of stress-related issues. Once Mr. Saili had used all of his FMLA leave, he applied for, and was granted, disability leave by Waste Management.

## COUNT I: HOSTILE WORK ENVIRONMENT

23.    The above paragraphs are incorporated herein by reference.

24.    Waste Management subjected Mr. Saili to a hostile, intimidating, and offensive work environment on the basis of his race.

25.    Waste Management's management team and Human Resources Department failed to take reasonable remedial action to address the racially hostile work

environment to which Mr. Saili was subjected. This racially hostile work environment violated 42 U.S.C. §1981.

26.     As a result of the racially hostile work environment to which Mr. Saili was subjected, he has suffered damages in the form of loss of past and future compensation, emotional distress, mental anguish, and loss of enjoyment of life.

27.     In subjecting Mr. Saili to a racially hostile work environment, Waste Management acted with malice or with reckless indifference to his federally protected rights.  Consequently, Waste Management is liable for punitive damages.

WHEREFORE, Mr. Saili prays for judgment against Waste Management for damages in excess of $100,000.00, consisting of loss of past and future compensation, emotional distress, mental anguish, loss of enjoyment of life, and punitive damages, plus attorney fees, prejudgment interest, and litigation costs.

## COUNT II: RACIAL DISCRIMINATION

28.     The above paragraphs are incorporated herein by reference.

29.     Waste Management discriminated against Mr. Saili because of his race by treating him less favorably than similarly situated white employees.  Waste Management's conduct violated 42 U.S.C. §1981.

30.     As a result of the racial discrimination by Waste Management, Mr. Saili has suffered damages in the form of loss of past and future compensation, emotional distress, mental anguish, and loss of enjoyment of life.

31.     In subjecting Mr. Saili to racial discrimination, Waste Management acted with malice or with reckless indifference to his federally protected rights.  Consequently, Waste Management is liable for punitive damages.

WHEREFORE, Mr. Saili prays for judgment against Waste Management for damages in excess of $100,000.00, consisting of loss of past and future compensation, emotional distress, mental anguish, loss of enjoyment of life, and punitive damages, plus attorney fees, prejudgment interest, and litigation costs.

## COUNT III: FMLA RETALIATION

32.     The above paragraphs are incorporated herein by reference.

33.     Mr. Saili is an "eligible employee" within the meaning of the FMLA.

34.     Mr. Saili engaged in protected activity under the FMLA by using FMLA leave on an intermittent basis during the first part of 2021.

35.     Waste Management retaliated against Mr. Saili for exercising his rights under the FMLA by refusing to promote him to the positions of lead heavy equipment operator and operations manager at Rolling Meadows.

36.     As a result of Waste Management's illegal and willful conduct, Mr. Saili has suffered serious economic losses.

WHEREFORE, Mr. Saili prays for judgment against Waste Management in excess of $100,000.00 consisting of back pay and benefits, front pay and benefits, and liquidated damages, plus prejudgment interest, attorney's fees, and litigation expenses.

Respectfully Submitted,

SLOAN, EISENBARTH, GLASSMAN
McENTIRE & JARBOE, L.L.C.

BY:   s/Alan V. Johnson
      Alan V. Johnson, KS #9992
      ajohnson@sloanlawfirm.com
      534 South Kansas Avenue, Suite 1000
      Topeka, Kansas 66603-3456
      785-357-6311
      Attorneys for Plaintiff

7

## **REQUEST FOR TRIAL BY JURY**

Pursuant to Fed. R. Civ. Pro. 38, the plaintiff requests a trial by jury on all claims triable to a jury.

Respectfully Submitted,

SLOAN, EISENBARTH, GLASSMAN
McENTIRE & JARBOE, L.L.C.

BY:___s/Alan V. Johnson_____
        Alan V. Johnson, KS #9992
        ajohnson@sloanlawfirm.com
        534 South Kansas Avenue, Suite 1000
        Topeka, Kansas 66603-3456
        785-357-6311
        Attorneys for Plaintiff

## <u>DESIGNATION OF PLACE OF TRIAL</u>

The plaintiff requests that Kansas City, Kansas, be designated as the place of trial in the above captioned matter.

Respectfully Submitted,

SLOAN, EISENBARTH, GLASSMAN
McENTIRE & JARBOE, L.L.C.

BY:   s/Alan V. Johnson
   Alan V. Johnson, KS #9992
   ajohnson@sloanlawfirm.com
   534 South Kansas Avenue, Suite 1000
   Topeka, Kansas 66603-3456
   785-357-6311
   Attorneys for Plaintiff