IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

KAULI SAILI, JR.,

Plaintiff,

v.

WASTE MANAGEMENT OF KANSAS, INC.,

Defendant.

Case No. 22-2060-DDC-KGG

**MEMORANDUM AND ORDER**

Plaintiff Kauli Saili, Jr. filed this lawsuit against his former employer, defendant Waste Management of Kansas, Inc., alleging hostile work environment and race discrimination claims under 42 U.S.C. § 1981 and a retaliation claim under the Family Medical Leave Act (FMLA), 29 U.S.C. § 2615(a)(2). Defendant now moves for summary judgment against plaintiff's claims. Defendant argues that plaintiff failed to disclose the existence of his employment discrimination claims against defendant in his pending bankruptcy proceedings. Because of plaintiff's omission, defendant asserts: (1) judicial estopped bars plaintiff from proceeding with this lawsuit, and (2) plaintiff lacks standing to bring this lawsuit. The court agrees with defendant's first argument. Judicial estoppel bars plaintiff's claims in this lawsuit. For this reason, the court grants defendant's Motion for Summary Judgment (Doc. 19). It explains why, below.

**I.      Uncontroverted Facts**

The following facts are uncontroverted, or where genuinely controverted, viewed in the light most favorable to the party opposing summary judgment. *Scott v. Harris*, 550 U.S. 372, 378–80 (2007).

In September 2016, plaintiff began working for defendant. Doc. 20-2 at 7 (Pl.'s Charge of Discrimination). Plaintiff alleges that, from "March 2017, to at least June 22, 2021,"

defendant subjected him to a hostile work environment based on his race and discriminated against him by treating him less favorably than similarly situated white employees. *Id.* Also, plaintiff alleges, from May 18, 2021 until June 19, 2021, defendant retaliated against him for taking FMLA leave by refusing to promote him to the positions of lead heavy equipment operator and operations manager. *Id.*; *see also* Doc. 1 at 7 (Compl. ¶ 35).

On June 25, 2021, plaintiff filed a Charge of Discrimination with the Kansas Human Rights Commission (KHRC) and the Equal Employment Opportunity Commission (EEOC). *See generally* Doc. 20-2 (Pl.'s Charge of Discrimination). Plaintiff's Charge alleged discrimination claims based on race, color, national origin, disability, age, and retaliation. *Id.* at 2, 6. On February 10, 2022, plaintiff filed his Complaint in this lawsuit, asserting hostile work environment, race discrimination, and FMLA retaliation claims. *See generally* Doc. 1.

On October 7, 2019, plaintiff filed for Chapter 13 bankruptcy in the United States Bankruptcy Court for the District of Kansas in Case No. 5:2019-bk-41246. Doc. 20-4 (Pl.'s Bankr. Pet.). Plaintiff's Bankruptcy Petition includes a Schedule of Property. *Id.* at 9–14. One of the questions on the Schedule of Property asks whether plaintiff had any "[c]laims against third parties, whether or not you have filed a lawsuit or made a demand for payment[;] Examples: Accidents, employment disputes, insurance claims, or rights to sue[.]" *Id.* at 13. Plaintiff checked "No" in response to this question. *Id.* Another question asked plaintiff to identify any "[o]ther contingent and unliquidated claims of every nature[.]" *Id.* Plaintiff again checked "No" in his response. *Id.* Plaintiff signed his Bankruptcy Petition and "declare[d] under penalty of perjury that the information provided is true and correct." *Id.* at 7.

On November 22, 2019, the Bankruptcy Court confirmed plaintiff's Chapter 13 Plan, ordering plaintiff to pay to the bankruptcy trustee $126.00 each month. Doc. 20-6 at 1 (Order

2

Confirming Plan). The Bankruptcy Court's Order Confirming the Plan advised plaintiff of his "Duty to Report," and ordered plaintiff to report "timely . . . to the Trustee any events affecting disposable income . . . including but not limited to tax refunds, inheritances, prizes, lawsuits, gifts, etc. that are received or receivable during the pendency of the case." *Id.*

On March 9, 2022, the Bankruptcy Trustee filed a Motion to Dismiss plaintiff's bankruptcy case because plaintiff had failed to make plan payments. Doc. 20-7 (Motion to Dismiss). On May 27, 2022, the Bankruptcy Court entered an Order granting plaintiff's Motion to Modify Plan to Abate Payments. Doc. 20-8 (Order Modifying Plan to Abate Payments). The Order recited that plaintiff had "suffered a loss of employment." *Id.* at 1. And it ordered plaintiff to "resume payments by May 31, 2022." *Id.* Also, the Order explained, "[i]n the event that payments are not resumed by May 31, 2022, [plaintiff] understands that the Trustee may submit an Order of Dismissal without further notice or hearing." *Id.*

On June 15, 2022, the Bankruptcy Court entered an Order of Dismissal of plaintiff's bankruptcy case. Doc. 20-9 (Order of Dismissal). The Bankruptcy Court dismissed the case because plaintiff still was in default in plan payments. *Id.* at 2.

On June 16, 2022, plaintiff filed a Motion to Reinstate his bankruptcy case. Doc. 20-10 (Motion to Reinstate and for Additional Attorney Fees). Plaintiff's motion alleged he "suffered loss of employment and was unable to timely remit Plan payments following a Motion to Abate." *Id.* at 2. Also, plaintiff asserted that he was "seeking employment but is receiving financial aid and has made a payment to his attorney's office in the amount of $252.00." *Id.*

Despite plaintiff representing his "loss of employment" to the Bankruptcy Court, plaintiff signed a sworn Interrogatory Answer in this case on July 22, 2022. Doc. 20-3 at 7, 14 (Pl.'s

3

Answer to Interrog. No. 6 & Signature Page). It states: "I have not been terminated from my employment at Rolling Meadows." *Id.* at 7 (Pl.'s Answer to Interrog. No. 6).

On July 15, 2022, the Bankruptcy Court reinstated plaintiff's bankruptcy case, reimposed an automatic stay, and directed the Bankruptcy Trustee to adjust the payment to allow the Plan to complete on time. Doc. 20-11 (Order to Reinstate and for Additional Attorney Fees).

Although plaintiff asserts in this case that the alleged harassment and discrimination began as early as March 2017, *see* Doc. 20-2 at 7 (Pl.'s Charge of Discrimination),[1] plaintiff never disclosed his employment discrimination claims against defendant when he filed his Bankruptcy Petition in October 2019, *see generally* Doc. 20-4 (Pl.'s Bankr. Pet.). Also, plaintiff never has filed any amended bankruptcy schedules to disclose any of the causes of action he asserts in this lawsuit. *See generally* Doc. 20-5 (Docket Report for Pl.'s Bankr. Case). And, in this lawsuit, plaintiff failed to disclose his pending bankruptcy case in his July 22, 2022, Interrogatory Answers. *See generally* Doc. 20-3. In response to an Interrogatory asking whether plaintiff "ha[s] ever been a party to . . . a lawsuit . . . , bankruptcy proceeding, or any other type of . . . legal proceeding[,]" plaintiff submitted this sworn Interrogatory Answer: "I filed a personal bankruptcy proceeding several years ago, but I do not recall the specific details." *Id.* at 5–6 (Pl.'s Answer to Interrog. No. 4).

On September 26, 2022, plaintiff filed a motion with the Bankruptcy Court asking for an Order appointing his legal counsel in this employment discrimination lawsuit as an agent of plaintiff's bankruptcy estate to prosecute the claims in this lawsuit. Mot. to Appoint Professional

---

[1] Also, plaintiff's Interrogatory Answers identify alleged harassment occurring as early as September 2018. Doc. 20-3 at 3 (Pl.'s Answer to Interrog. No. 1).

4

[Tort], *In re: Kauli Saili, Jr.*, No. 19-41246-13-DLS (D. Kan. Sept. 26, 2022), ECF No. 54.[2] On November 2, 2022, the Bankruptcy Court granted the motion. Order Granting Motion to Appoint Professional (Tort), *In re: Kauli Saili, Jr.*, No. 19-41246-13-DLS (D. Kan. Nov. 2, 2022), ECF No. 58.

## II.  Summary Judgment Standard

The standard for deciding summary judgment under Federal Rule of Civil Procedure 56 is well-known. Summary judgment is appropriate if the moving party demonstrates that "no genuine dispute" exists about "any material fact" and that it is "entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). When it applies this standard, the court views the evidence and draws inferences in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). An issue of "material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party" on the issue. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And, an issue of fact is "material" if it has the ability to "affect the outcome of the suit under the governing law[.]" *Id.*

The party moving for summary judgment bears the initial burden of showing "the basis for its motion[.]" *Celotex*, 477 U.S. at 323. A summary judgment movant can satisfy this burden by demonstrating "that there is an absence of evidence to support the nonmoving party's

---

[2] Plaintiff submitted a draft version of the Motion to Appoint with his Memorandum in Opposition to Defendant's Motion for Summary Judgment. Doc. 25 at 4–6. The court may take judicial notice of the filed-version of this motion as well as other filings on the ECF docket for plaintiff's bankruptcy case. *See St. Louis Baptist Temple, Inc. v. FDIC*, 605 F.2d 1169, 1172 (10th Cir. 1979) ("[F]ederal courts, in appropriate circumstances, may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue."); *see also Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006) (explaining that a court may "take judicial notice of its own files and records, as well as facts which are a matter of public record" (citation and internal quotation marks omitted)).

case." *Id.* at 325. If the moving party satisfies its initial burden, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (citation and internal quotation marks omitted). To satisfy this requirement, the nonmoving party must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (citation and internal quotation marks omitted). When deciding whether the parties have shouldered their summary judgment burdens, "the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

Summary judgment is not a "disfavored procedural shortcut[.]" *Celotex*, 477 U.S. at 327. Instead, it is an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.'" *Id.* (quoting Fed. R. Civ. P. 1).

### III. Analysis

Defendant argues that the court should grant summary judgment for two reasons. *First*, defendant asserts that plaintiff is judicially estopped from prosecuting his employment discrimination claims in this lawsuit because he failed to disclose those claims in his bankruptcy proceedings. *Second*, defendant argues, plaintiff lacks standing to litigate his employment discrimination claims. Defendant asserts that plaintiff's claims are property of the bankruptcy estate. Thus, it contends, plaintiff can't prosecute his claims in his individual capacity. Because plaintiff currently asserts his claims in his individual capacity—and not on behalf of the bankruptcy estate—plaintiff lacks standing, defendant contends.

Plaintiff's Opposition to defendant's Motion for Summary Judgment doesn't mount much of a defense against these arguments. In a single paragraph, plaintiff asserts that the Federal

Rules of Bankruptcy Procedure permit a "'Chapter 13 debtor [to] pursue . . . non-bankruptcy claims on behalf of the bankruptcy estate as the real party in interest . . . .'" Doc. 25 at 2 (quoting *Hayes v. Find Track Locate, Inc.*, 60 F. Supp. 3d 1144, 1149 (D. Kan. 2014)). And plaintiff asserts that his bankruptcy estate has hired his counsel in this lawsuit to prosecute the claims in this case. *Id.* Plaintiff's assertions appear to address the standing question, but they never respond to defendant's judicial estoppel argument. Also, plaintiff never disputes that he failed to disclose his potential employment discrimination claims when he filed his Bankruptcy Petition in October 2019. And, he tacitly concedes, he never filed any amended bankruptcy schedules or other filings in his bankruptcy proceedings to disclose any of this lawsuit's causes of action until after defendant filed its Motion for Summary Judgment seeking dismissal of plaintiff's claims based on judicial estoppel.

For reasons explained below, the court concludes that judicial estoppel bars plaintiff's claims in this lawsuit. But *first*, the court briefly addresses defendant's standing argument and explains why the court won't dismiss the case for lack for lack of standing. Then, *second*, the court addresses defendant's judicial estoppel argument. The court agrees with defendant. Under the governing legal standard, plaintiff is judicially estopped from prosecuting these claims. Thus, the court grants summary judgment against plaintiff's claims. The court explains how it reaches these conclusions in more detail, below.

### A. Standing

Defendant asserts that plaintiff lacks standing—on his own behalf—to prosecute his employment discrimination claims in this lawsuit. Defendant correctly explains that plaintiff's claims are properly belonging to the bankruptcy estate. *See Barker v. Asset Acceptance, LLC*, 874 F. Supp. 2d 1062, 1065 (D. Kan. 2012) ("Once a party files for bankruptcy, the claims of

that party become the property of the bankruptcy estate." (citing *Riggs v. Aetna Life Ins. Co.*, 188 F. App'x 659, 663 (10th Cir. 2006))). "A Chapter 13 debtor, however, has standing to file and prosecute a complaint on behalf of the bankruptcy estate as a debtor in possession." *Id.* (citing *Smith v. Rockett*, 522 F.3d 1080, 1081 (10th Cir. 2008)). Here, the Bankruptcy Court has entered an Order appointing plaintiff's counsel in this lawsuit as an agent of the bankruptcy estate to prosecute his employment discrimination claims. Plaintiff has standing to prosecute these claims in his capacity as a Chapter 13 bankruptcy debtor on behalf of the bankruptcy estate. Because plaintiff is working to cure any standing issues, *i.e.*, securing the Bankruptcy Court's appointment of his counsel as an agent of the bankruptcy estate to prosecute this lawsuit, the court declines to dismiss plaintiff's lawsuit on standing grounds.

### B. Judicial Estoppel

The court next addresses defendant's judicial estoppel argument. Defendant correctly asserts that the "bankruptcy code imposes a duty upon a debtor to disclose all assets, including contingent and unliquidated claims." *Eastman v. Union Pac. R.R. Co.*, 493 F.3d 1151, 1159 (10th Cir. 2007) (citing 11 U.S.C. § 521(1)). This duty "encompasses disclosure of all legal claims and causes of action, pending or potential, which a debtor might have." *Id.* Our Circuit has recognized, however, that a debtor may have "a motive to sweep his [legal claims] 'under the rug' so he [can] obtain a discharge free and clear of creditors." *Id.* To "offset such a motive" and to "induc[e] debtors to be completely truthful in their bankruptcy disclosures[,]" courts apply "the doctrine of judicial estoppel" to bar a debtor from prosecuting legal claims that he failed to disclose in his bankruptcy proceedings. *See id.* at 1159–60 (affirming "district court's discretionary application of judicial estoppel" to grant summary judgment against plaintiff's personal injury claims because plaintiff had failed to disclose claims in his bankruptcy

8

proceedings); *see also Anderson v. Seven Falls Co.*, 696 F. App'x 341, 344–48 (10th Cir. 2017) (affirming summary judgment against plaintiff's undisclosed legal claims "on judicial estoppel grounds"); *Queen v. TA Operating, LLC*, 734 F.3d 1081, 1094–95 (10th Cir. 2013) (same); *Reese v. HomeAdvisor, Inc.*, No. 2:20-CV-02566-JAR-GEB, 2021 WL 3129447, at *4–8 (D. Kan. July 23, 2021) (granting motion to dismiss plaintiff's employment discrimination claims "on the basis of judicial estoppel due to [p]laintiff's failure to disclose her claims against [defendant] in her bankruptcy proceedings"); *Patriot Mfg. LLC v. Hartwig, Inc.*, 996 F. Supp. 2d 1120, 1123 (D. Kan. 2014) (granting summary judgment against plaintiff's breach of contract claims "on the basis of judicial estoppel" because one of plaintiff's owners "failed to disclose this lawsuit when he filed his personal bankruptcy petition"), *aff'd*, 613 F. App'x 753 (10th Cir. 2015); *Higgins v. Potter*, No. 08-2646-JWL, 2010 WL 11526772, at *1 (D. Kan. Aug. 20, 2010) (granting summary judgment against plaintiff's race discrimination claims because judicial estoppel barred plaintiff "from pursuing her claims . . . based on her failure to disclose them as assets in the context of her Chapter 13 bankruptcy proceeding"), *aff'd* 416 F. App'x 731 (10th Cir. 2011).

Below, the court provides the legal standard governing the doctrine of judicial estoppel. Then, the court applies that governing legal standard to the summary judgment facts here to decide whether judicial estoppel bars plaintiff from prosecuting his claims because he failed to disclose the claims in his bankruptcy proceeding.

1. **Legal Standard**

Judicial estoppel is an equitable doctrine designed "'to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment'" and "'to prevent improper use of judicial machinery.'" *Queen*, 734 F.3d at 1087 (quoting *New Hampshire v. Maine*, 532 U.S. 742, 749–50 (2001)). Federal courts may

9

invoke judicial estoppel "'at [their] discretion.'" *Id.* (quoting *New Hampshire*, 532 U.S. at 749–50). Although "the circumstances under which a court might invoke judicial estoppel will vary, three factors 'typically inform the decision whether to apply the doctrine in a particular case.'" *Eastman*, 493 F.3d at 1156 (quoting *New Hampshire*, 532 U.S. at 750). *First*, "a party's subsequent position must be '"clearly inconsistent"' with its former position." *Id.* (quoting *New Hampshire*, 532 U.S. at 750). *Second*, "a court should inquire whether the suspect party succeeded in persuading a court to accept that party's former position, 'so that judicial acceptance of an inconsistent position in a later proceeding would create the *perception* that either the first or the second court was misled[.]'" *Id.* (quoting *New Hampshire*, 532 U.S. at 750). *Third*, "the court should inquire whether the party seeking to assert an inconsistent position would gain an unfair advantage in the litigation if not estopped." *Id.* (citing *New Hampshire*, 532 U.S. at 751).

These three factors are not "inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel." *New Hampshire*, 532 U.S. at 751. The Supreme Court has recognized that "[a]dditional considerations may inform the doctrine's application in specific factual contexts." *Id.* Also, because "judicial estoppel is an equitable doctrine, a court must consider all of the equities of a particular case." *Patriot Mfg.*, 996 F. Supp. 2d at 1125. Our Circuit has applied the doctrine of judicial estoppel "'both narrowly and cautiously[.]'" *Reese*, 2021 WL 3129447, at *4 (quoting *Asarco, LLC v. Noranda Mining, Inc.*, 844 F.3d 1201, 1208 (10th Cir. 2017)). And our Circuit imposes "the burden . . . to show the need for the imposition of judicial estoppel" on the party invoking its application. *Id.* (citing *Asarco*, 844 F.3d at 1207).

In "the specific context of bankruptcy proceedings[,]" our Circuit has "recognized the vitality of the doctrine" of judicial estoppel. *Autos, Inc. v. Gowin*, 244 F. App'x 885, 890 (10th Cir. 2007). And, it has observed, "[n]umerous courts have agreed that the omission of a cause of action as an asset in bankruptcy provides an appropriate basis for imposing judicial estoppel." *Id.* (collecting cases); *see also Eastman*, 493 F.3d at 1159 (recognizing that "the overwhelming majority of cases where debtors, who have failed to disclose legal claims to the bankruptcy court without credible evidence of why they did so, have been judicially estopped from pursuing such claims").

The court next applies this governing legal standard to the summary judgment facts here and considers the three factors, as well as other considerations, to decide whether judicial estoppel bars plaintiff's claim in this lawsuit.

### 2.  First Factor:  Clearly Inconsistent Positions

The first factor favors applying judicial estoppel here. The summary judgment facts present no triable issue whether plaintiff adopted clearly inconsistent positions. Plaintiff did so by failing to disclose his employment discrimination claims in his bankruptcy proceedings, and then, later, asserting them in this action. Judicial estoppel is "appropriate" when "'a party's subsequent position [is] "clearly inconsistent" with its former position.'" *Anderson*, 696 F. App'x at 345 (quoting *Eastman*, 493 F.3d at 1156 (quoting *New Hampshire*, 532 U.S. at 750)). Our Circuit "previously [has] explained that failing to disclose a potential claim as an asset [in bankruptcy proceedings] is clearly inconsistent with then prosecuting an action in pursuit of that claim." *Id.* (citing *Eastman*, 493 F.3d at 1158 (further citations omitted)). That's exactly what plaintiff did—and didn't do—here.

Plaintiff alleges that defendant subjected him to unlawful harassment and discrimination beginning as early as March 2017.  Doc. 20-2 at 7 (Pl.'s Charge of Discrimination).  And he asserts that defendant retaliated against him for taking FMLA leave beginning in May 2021.  Doc. 1 at 7 (Compl. ¶ 35).  But plaintiff never disclosed his potential harassment and discrimination claims when he filed his Bankruptcy Petition in October 2019.  Doc. 20-4 (Pl.'s Bankr. Pet.).  Also, plaintiff never amended his bankruptcy schedules to disclose either his race discrimination or FMLA retaliation claims after he filed his Charge of Discrimination in June 2021, or when he filed this lawsuit in February 2022—despite an ongoing obligation to make (and supplement) the disclosures.  *See Cole v. Convergys Customer Mgmt. Grp., Inc.*, No. 12-2404-SAC, 2013 WL 2151586, at *4 (D. Kan. May 16, 2013) ("Plaintiff's obligation to disclose pending and unliquidated claims in bankruptcy proceedings is an ongoing one.").  Indeed, plaintiff doesn't dispute it.  He never filed any amended bankruptcy schedules (or other filings in his bankruptcy proceedings) to disclose his employment discrimination claims until after defendant filed its Motion for Summary Judgment based on judicial estoppel.

Also, in this lawsuit, plaintiff failed to disclose his pending bankruptcy case in his Interrogatory Answers that he signed on July 22, 2022.  *See* Doc. 20-3 at 5–6, 14 (Pl.'s Answer to Interrog. No. 4 & Signature Page).  In response to an interrogatory asking plaintiff to identify all legal proceedings to which he was a party, plaintiff answered:  "I filed a personal bankruptcy proceeding several years ago, but I do not recall the specific details."  *Id.* at 5–6 (Pl.'s Answer to Interrog. No. 4).  Plaintiff submitted this sworn Interrogatory Answer while his bankruptcy proceeding was ongoing.  Indeed, just a few weeks earlier, plaintiff had filed a Motion to Reinstate his bankruptcy case.  *See* Doc. 20-10 (Motion to Reinstate and for Additional Attorney Fees (filed June 16, 2022)).  And just seven days before he signed his Interrogatory Answers, the

Bankruptcy Court reinstated plaintiff's bankruptcy case, reimposed an automatic stay, and directed the Bankruptcy Trustee to adjust the payment to allow the Plan to complete on time. Doc. 20-11 (Order to Reinstate and for Additional Attorney Fees (filed July 15, 2022)).  Thus, plaintiff's sworn response that he filed a "personal bankruptcy proceeding several years ago," but that he did not "recall the specific details" seems disingenuous in light of the pending status of his Chapter 13 bankruptcy case.  Doc. 20-3 at 5–6, 14 (Pl.'s Answer to Interrog. No. 4 & Signature Page).

Based on these facts, there is no genuine dispute whether plaintiff has taken positions in this lawsuit that are "clearly inconsistent" with his positions in his bankruptcy proceeding.  *See Anderson*, 696 F. App'x at 346 (finding that "district court properly found this first factor was satisfied" because debtor's "position in her original [bankruptcy] petition (that she had no pending claims) was inconsistent with her position in the district court (actively pursuing a potential claim)"); *see also Barker v. Asset Acceptance, LLC*, 874 F. Supp. 2d 1062, 1068 (D. Kan. 2012) (finding that "plaintiff knew of the facts giving rise to his inconsistent positions and he had motive to conceal the facts to keep this lawsuit out of reach of his creditors" but yet he "did not voluntarily amend his schedules; he only did so after [d]efendant's motion for summary judgment on the basis of judicial estoppel").  Thus, this first factor favors applying judicial estoppel.

### 3.  Second Factor:  Perception that Plaintiff Misled the Court

The second factor also favors applying judicial estoppel.  When "considering the second factor of judicial estoppel, 'a court should inquire whether the suspect party succeeded in persuading a court to accept that party's former position, so that judicial acceptance of an inconsistent position in a later proceeding would create the *perception* that either the first or the

13

second court was misled.'" *Queen*, 734 F.3d at 1091 (quoting *Eastman*, 493 F.3d at 1156). When "making this determination," the "'concern is not so much whether'" the debtor "'acted with some nefarious motive[.]'" *Id.* (quoting *Paup v. Gear Prods., Inc.*, 327 F. App'x 100, 107 (10th Cir. 2009)). Instead, the concern "is with whether [the debtor's] actions led the bankruptcy court to accept [the debtor's] position, so that judicial acceptance of an inconsistent position in a later proceeding would introduce the risk of inconsistent court determinations and thus pose a threat to judicial integrity." *Id.* (quoting *Paup*, 327 F. App'x at 107).

Our Circuit has found that the "second element of judicial estoppel" was "met" when a debtor "convinced the bankruptcy court to confirm her Chapter 13 plan without disclosing her claims against" defendant. *Autos*, 244 F. App'x at 891. The Circuit observed that by "failing to disclose her claims as an asset on her schedules, [the debtor] actively deceived her creditors and misled the bankruptcy court about the scope of the estate." *Id.* The Circuit also explained that the "integrity of bankruptcy proceedings is compromised if the bankruptcy court cannot rely on the information disclosed by a debtor, or if substantial known assets come to light after the court has confirmed a plan of distribution." *Id.*

That's precisely what plaintiff did here. Plaintiff convinced the Bankruptcy Court to confirm his Chapter 13 Plan on November 22, 2019, without disclosing his claims against defendant. Doc. 20-6 at 1 (Order Confirming Plan). After that, plaintiff made other representations to the Bankruptcy Court that give the perception that he was misleading the court. His representations to the Bankruptcy Court contradict his positions in this lawsuit—most notably, he never amended his bankruptcy schedules to disclose the existence of this lawsuit's employment discrimination claims. Thus, by "failing to disclose [his] claims as an asset on [his] schedules," plaintiff "actively deceived [his] creditors and misled the bankruptcy court about the

14

scope of the estate." *Autos*, 244 F. App'x at 891.  As a consequence, the second factor favors applying judicial estoppel to plaintiff's claims.

### 4. Third Factor:  Unfair Advantage

The third factor also favors applying judicial estoppel.  This factor requires the court to "'inquire whether the party seeking to assert an inconsistent position would gain an unfair advantage in the litigation if not estopped.'"  *Queen*, 734 F.3d at 1092 (quoting *Eastman*, 493 F.3d at 1156).  Our Circuit has explained that "'[a] debtor, once he files for bankruptcy, disrupts the flow of commerce and promptly benefits from an automatic stay,'" and "'then receives the ultimate benefit of bankruptcy when he receives a discharge.'"  *Id.* (quoting *Eastman*, 493 F.3d at 1159).  Although plaintiff hasn't yet received a discharge in his bankruptcy, he has benefited from the automatic stay.  His "tactic" of non-disclosure "would both derive an unfair benefit and impose an unfair detriment because if it had succeeded, it would have shielded any recovery in [this] lawsuit from [his] creditors, bestowing an unfair benefit on the debtor at the expense of [his] creditors."  *Higgins*, 2010 WL 11526772, at *2.

The undisputed facts here are similar to ones in a case where Judge Robinson applied judicial estoppel to bar plaintiff's Fair Debt Collection Practices Act claims because he had failed to disclose them in his bankruptcy proceedings.  *See Barker*, 874 F. Supp. 2d at 1069.  Like plaintiff here, the *Barker* plaintiff "fail[ed] to include [his] lawsuit on the bankruptcy schedules." *Id.* at 1067.  Also, like plaintiff here, the *Barker* plaintiff "only amended his schedules in response to the motion for summary judgment based on judicial estoppel."  *Id.*  Even though the Bankruptcy Court had not yet approved the *Barker* plaintiff's bankruptcy plan, Judge Robinson concluded that plaintiff had "put himself in a position to gain an unfair advantage over his creditors by failing to include [his] lawsuit on the bankruptcy schedules."  *Id.*

When reaching this conclusion, Judge Robinson relied on the Tenth Circuit's reasoning in *Eastman*, where the Circuit found it "inconsequential" that the debtor's "bankruptcy was reopened and his creditors were made whole once his omission became known[.]" *Eastman*, 493 F.3d at 1160. *Eastman* explained: "Allowing [*Eastman*'s plaintiff] to back up and benefit from the reopening of his bankruptcy only after his omission had been exposed would suggest that a debtor should consider disclosing potential assets only if he is caught concealing them." *Id.* (citation, internal quotation marks, and brackets omitted); *see also Barker*, 874 F. Supp. 2d at 1068 (quoting *Eastman*, 493 F.3d at 1160). Applying that reasoning to *Barker*'s facts, Judge Robinson noted that plaintiff "knew of the facts giving rise to his inconsistent positions and he had motive to conceal the facts to keep [his] lawsuit out of reach of his creditors." *Barker*, 874 F. Supp. 2d at 1068. Thus, Judge Robinson concluded "no reasonable juror could come to any conclusion other than that [p]laintiff's actions were a deliberate attempt to deceive the bankruptcy court and manipulate the judicial system to gain an unfair advantage over his creditors . . . which is exactly what judicial estoppel is designed to prevent." *Id.* at 1069. Thus, Judge Robinson found it "appropriate" to apply judicial estoppel to bar the *Barker* plaintiff's claims. *Id.*

Judge Robinson's reasoning applies with equal force here. The undisputed facts establish that plaintiff knew about his inconsistent positions—*i.e.*, he ignored his obligation to disclose his claims to the Bankruptcy Court while prosecuting the claims in this court. Also, he had a motive to conceal the claims so that they remained out of his creditors' reach. Based on the undisputed facts, there's no jury question whether plaintiff would gain an unfair advantage in the litigation if the court declined to apply judicial estoppel. Thus, the third factor favors applying judicial estoppel to bar plaintiff's claims.

### 5. Other Considerations

The court last considers whether any other factors disfavor applying judicial estoppel here. As our Circuit has explained, some "courts addressing a debtor's failure to satisfy the legal duty of full disclosure to the bankruptcy court have deemed such failure inadvertent or mistaken[.]" *Eastman*, 493 F.3d at 1157. But they have done so "only when, in general, the debtor either lacks knowledge of the undisclosed claims or has no motive for their concealment." *Id.* (citations and internal quotation marks omitted). Here, plaintiff never asserts that he either lacked knowledge of his undisclosed claims or lacked motive to conceal them. Indeed, his Opposition to defendant's summary judgment motion never argues that any of our Circuit's factors disfavor applying judicial estoppel here. *See generally* Doc. 25. Thus, none of the other considerations persuade the court that it should refrain from applying judicial estoppel here. *See Anderson*, 696 F. App'x at 347 (finding that district court did not abuse its discretion by inferring that debtor knew about potential claim and had a motive to conceal "a potential asset that would result in the denial of a discharge" in bankruptcy).

In sum, all three factors favor applying judicial estoppel here. And no other factor disfavors it. Thus, the court concludes that judicial estoppel applies to bar plaintiff's employment discrimination claims because he failed to disclose the claims in his bankruptcy proceedings.

### IV. Conclusion

For reasons explained, plaintiff is judicially estopped from proceeding with this lawsuit because he failed to disclose his claims against defendant in his bankruptcy proceedings. Thus, the court grants defendant's Motion for Summary Judgment (Doc. 19).

Also, the court denies as moot defendant's Partial Motion to Dismiss, or in the Alternative, Motion for More Definite Statement (Doc. 5). Defendant's Partial Motion to Dismiss seeks dismissal of Count I—plaintiff's hostile work environment claim—for failing to state a plausible claim under Fed. R. Civ. P. 12(b)(6). Alternatively, the Partial Motion to Dismiss asks the court to order plaintiff to file a more definite statement under Fed. R. Civ. P. 12(e). Because the court has granted defendant's Motion for Summary Judgment against all of plaintiff's claims, it need not address defendant's Rule 12(b)(6) arguments against plaintiff's Count I. Thus, the court denies as moot defendant's Partial Motion to Dismiss, or in the Alternative, Motion for More Definite Statement (Doc. 5).

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant Waste Management of Kansas, Inc.'s Motion for Summary Judgment (Doc. 19) is granted.

**IT IS FURTHER ORDERED THAT** defendant Waste Management of Kansas, Inc.'s Partial Motion to Dismiss, or in the Alternative, Motion for More Definite Statement (Doc. 5) is denied as moot.

**IT IS FURTHER ORDERED THAT** the Clerk of the Court is directed to enter a judgment consistent with this Memorandum and Order.

**IT IS SO ORDERED.**

**Dated this 7th day of November, 2022, at Kansas City, Kansas.**

> s/ Daniel D. Crabtree
> **Daniel D. Crabtree**
> **United States District Judge**